UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

21C LLC                                                                                          PLAINTIFF

v.                                                              CIVIL ACTION NO. 3:05CV-751-S

WYNDHAM MANAGEMENT CORPORATION                                                  DEFENDANT

## MEMORANDUM OPINION AND ORDER

This action seeks a declaration of the rights of the parties, 21C LLC[1] and Wyndham

Management Corporation, with respect to a contract for the management of a new hotel, 21C, in

Louisville, Kentucky.  The defendant, Wyndham Management, has moved to dismiss certain claims

which allege breach of a covenant of good faith and fair dealing and breach of fiduciary duties.

When a motion to dismiss is made, the court must take the allegations of the complaint as

true and grant dismissal only when it is beyond doubt that the plaintiffs can prove no set of facts

entitling them to relief.  *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).

Laura Lee Brown and Steve Wilson, the developers of 21C, met with Fred Kleisner, then

Chairman and CEO of Wyndham International, Inc.[2]  After a number of meetings with Kleisner,

Brown and Wilson wanted Wyndham Management to launch and manage the hotel.  They decided

upon Wyndham Management because of their discussions with Kleisner regarding the strength of

the Wyndham brand and because of its upscale image.

21C LLC entered into a hotel management agreement with Wyndham Management on

February 6, 2004.  By the terms of the agreement, Wyndham Management became 21C LLC's "sole

---

[1]Formerly West Main Museum and Hotel, LLC.

[2]It is unclear what corporate relationship Wyndham Management bore to Wyndham International.  It is sufficient for our purposes that Wyndham Management was an entity capable of entering into the management agreement in question.  Wyndham Management was sold to the Blackstone Group in 2005 as part of Blackstone's acquisition of Wyndham International.

and exclusive agent" for "managing and operating the hotel to be renovated and situated on the Site...upon the terms and conditions set forth in this Agreement." Agreement, Recitals, p.1; Article II, p. 12. Under the agreement, Wyndham Management was to provide pre-opening, management and operating services for 21C. The projected opening date for the hotel was April 1, 2006.

On June 14, 2005, Wyndham International announced an agreement under which it would be acquired by the Blackstone Group, a private investment firm. Blackstone acquired Wyndham International on August 16, 2005. On that same day, Blackstone announced the formation of LXR Luxury Resorts which would own and operate fourteen of Wyndham's most luxurious properties. These properties would no longer be known as Wyndham properties, but would return to their original names. On September 14, 2005, it was announced that Wyndham's franchise agreements for 82 hotels, management contracts for 29 hotels (including the agreement to manage 21C) and the worldwide rights to the Wyndham brand would be sold to Cedant Corporation, an operator of midscale and economy hotels. On October 6, 2005, it was announced that Columbia Sussex Corporation would also acquire fourteen of the high-end Wyndham properties.

This matter is before the court on motion of Wyndham Management to dismiss Counts III and IV of the complaint.

The contract provided for the inclusion of the word "Wyndham" or any applicable successor brand name in 21C's name. The contract further provided that

> [Wyndham Management] at any time and from time to time during the Term may determine to change the brand name under which some or all of the hotels currently operated under the "Wyndham" brand name are to be operated. In connection with such change, [21C LLC] agrees that [Wyndham Management] may change the brand name under which [21C] is operated without the consent of [21C LLC] so long as the new brand name is ranked by Smith Travel Research...in the same category as, or a higher category than, that in which the "Wyndham" brand name is so ranked...

Article XIII, § 13.1.

After Wyndham International was acquired, Blackstone removed the Wyndham name from 14 properties owned and operated by LXR Luxury Resorts. The name of 21C remained unchanged.

Cedant, who ultimately acquired the management agreement for 21C, also acquired the worldwide rights to the Wyndham name.  21C LLC urges, however, that the clause in the agreement relating to name changes evidences 21C LLC's intent to ensure that its hotel would remain affiliated with a luxury-ranked hotel group, be that Wyndham or an equally prestigious successor.  21C LLC urges that upon the acquisition of Wyndham International, Blackstone essentially ladled the cream off the top by removing from the group and debranding the Wyndham high-end properties.  What was left to be sold to Cedant was a lesser Wyndham, inasmuch as the Wyndham name was no longer associated with the 28 elite properties.

The agreement contained a provision addressing assignment of the agreement by Wyndham Management:

> Except as herein provided, [Wyndham Management] shall not assign its rights and obligations under this Agreement without the approval of [21C LLC].  [Wyndham Management] shall have the right, without the consent of [21C LLC], to assign its interest in this Agreement to...(ii) any assignee who also acquires all, or substantially all, of the assets of [Wyndham Management] and assumes it obligations hereunder, provided such assignee is financially responsible and capable of performing the duties of [Wyndham Management] hereunder and has the right to use the name "Wyndham" (or any successor brand).   In such latter event, [Wyndham Management]'s liability hereunder shall terminate upon such assignment...

Agreement, Article X, § 10.1.

21C LLC claims that the manner in which the sale to Cedant was carried out, that is, the removing and debranding of the elite properties prior to the sale to Cedant, was an attempt by Wyndham Management and Blackstone to circumvent Article X, § 10.1 of the agreement.  21C LLC alleges that it "will no longer be able to attract the patronage or realize the revenue it could have realized as a Wyndham property before" the "dilution of the Wyndham brand."  Complaint, ¶ 39.

21C LLC also contends that Wyndham Management failed to comply with its obligations to provide the required pre-opening services.  It alleges that on September 11, 2005, a month prior to the closure of the sale to Cedant, 21C LLC was notified that key Wyndham Management employees were to be terminated effective September 25, 2005.  21 C LLC claims that it was

essentially abandoned by Wyndham Management inasmuch as these key employees were not replaced and they were not provided with the support and services required under the contract.

In Count III of the complaint, 21 C LLC alleges that Wyndham Management breached an implied covenant of good faith and fair dealing by "engaging in an ongoing course of conduct calculated to strip Wyndham of its most luxurious properties, which in turn has significantly diluted the 'Wyndham' brand name," despite its knowledge of the value placed by 21C LLC on the Wyndham luxury brand.

In Count IV of the complaint, 21C LLC alleges that Wyndham Management, as 21C LLC's exclusive agent for the management and operation of 21C, owed it fiduciary duties to subvert its own self-interest in favor of 21C LLC, to communicate in a timely manner concerning the proposed assignment of their agreement, and to avoid disruptions such as the termination of key employees which would interfere with the timely completion of its obligations under the agreement.

Wyndham Management has moved to dismiss Count III (Breach of Covenant of Good Faith and Fair Dealing) on the ground that the agreement at Article XIII, § 13.1 permitted Wyndham Management to change the brand name under which some or all of its Wyndham hotels were then operating. 21C LLC urges, however, that § 13.1 does not apply because, in fact, the brand name under which 21C is operated was not changed. Rather it is 21C LLC's perception of a diminishment in the value of the Wyndham name of which it complains.

The court agrees with Wyndham Management that this diminishment in the value of the Wyndham name is nothing more than a creative articulation of its dissatisfaction with the debranding of Wyndham's high-end properties. As Wyndham Management notes, 21C LLC attempts to focus the court on the perceived effect of the debranding of certain properties. Section 13.1 of the agreement clearly permits Wyndham Management to debrand its properties. The Wyndham name could be removed at any time from its hotels. There is no protection in the clause against Wyndham Management's actions with respect to properties other than 21C. To imply

- 4 -

obligations with respect to the corporation's management of properties not the subject of its agreement would impermissibly expand the parameters of the agreement.

Section 13.1 clearly protects *21C's* image as a Wyndham hotel.  It protects 21C from a forced name change where there would be a resultant reduction in the prestigious image of the hotel's management.  The issue of prestige was addressed solely with respect to the use of the Wyndham name for the new hotel.  21C LLC would have the court rule that no debranding of Wyndham high-end properties was permitted under the agreement because it would devalue the meaning of the name "Wyndham," to the detriment of 21C's image.  This alleged "duty of good faith" or "fiduciary duty" to protect the image of 21C is well beyond the interests actually protected with this agreement.  21C LLC's argument reflects its hope and desire that Wyndham International would remain a prestigious hotel chain with which 21C could associate itself.  However, the agreement did not permit 21C LLC to control the debranding of other properties on such a hope and desire, in contradiction of express language permitting it.

> There can be no implied covenant of good faith and fair dealing as to a matter specifically covered by the written terms of a contract.  *Freeport Sulphur Co. v. American Sulphur Royalty Co.*, 117 Tex. 439, 6 S.W.2d 1039, 1042 (1928).  The agreement made by the parties and embodied in the contract itself cannot be varied by an implied good-faith-and-fair-dealing covenant.  *See, English v. Fischer*, 660 S.W.2d 521 (Tex.1983).

*Exxon Corporation v. Atlantic Richfield Company*, 678 S.W.2d 944, 947 (Tex.1984).[3]

In *Monumental Life Insurance Co. v. Nationwide Retirement Solutions, Inc.*, 242 F.Supp.2d 438, 449 (W.D. Ky. 2003) the court stated that under the facts before it,

> Under Kentucky law a fiduciary relationship is "founded on trust and confidence reposed by one person in the integrity and fidelity of another...in which a duty is created in one person to act primarily for another's benefit in matters connected with [the] undertaking."  *Steelvest Inc. v. Scansteel Service Ctr.*, 807 S.W.2d 476, 485 (1991)...Where a contract exists defining the scope of the principal-agent

---

[3]The parties agree that Texas law governs our analysis of the claim for breach of the covenant of good faith and fair dealing and that Kentucky law governs analysis of the claims for breach of fiduciary duties.  We find no error in the parties' choice of law analyses.

relationship, as is the case here, a limited agency relationship arises.  *Fulcrum Financial Partners v. Meridian Leasing Corp.*, 230 F.3d 1004, 1012-13 (7th Cir. 2000).  in that more limited setting, the existence and extent of the agent's duties are determined by the agreement between the parties.  *Restatement (Second) of Agency* (1958) § 376.

Section 13.1 clearly states that Wyndham Management may debrand its properties.  21C LLC has offered no authority to support its contention that a "duty of good faith"  or a "fiduciary duty" to protect 21C's image may be transformed into an entitlement to a level of corporate control explicitly *not* granted to 21C LLC.

21C LLC urges that nothing in the contract expressly addresses whether Wyndham Management could diminish the image of the Wyndham brand.  The court finds however that § 13.1 expressly addresses and permits the precise conduct in question.  The hook upon which 21C LLC hangs its argument is that twenty-eight prestigious properties were no longer among the Wyndham properties which were sold to Cedant.  The disassociation of the Wyndham name with these twenty-eight properties is the sole action which forms the basis for the complaint of diminishment in value of the Wyndham name.  As Wyndham Management expressly reserved the right to do this, the motion to dismiss Counts III and IV on this basis will be granted.

The remaining claims for breach of fiduciary duty under Count IV allege that Wyndham Management failed to communicate in a timely manner concerning the proposed assignment of their agreement, and to avoid disruptions such as the termination of key employees which would interfere with the timely completion of its obligations under the agreement.  Wyndham management seeks to dismiss these claims on the ground that the existence of the agreement between the parties precludes 21C LLC's assertion of fiduciary duties apart from the contractual obligations undertaken by Wyndham Management in the agreement.[4]  As stated in § 376 of the Restatement 2d of the Law

---

[4]The court has already rejected the claim for breach of a fiduciary duty to preserve the prestige of the Wyndham name for the benefit of 21C on the ground that the debranding of Wyndham properties was a right expressly reserved in the contract.  An

(continued...)

- 6 -

of Agency, to which both the courts of Texas and Kentucky look for guidance, "The existence and extent of the duties of the agent to the principal are determined by the terms of the agreement between the parties, in light of the circumstances under which it is made..."  The comment to this section noted that

> Agency is a relation based upon the manifestation of consent of the parties and hence, except where the manifestations do not have legal effect, the duties of both parties are based upon them.  Unless the parties have manifested an intent otherwise, the agreement is interpreted to be that which, in view of the conduct of the parties in light of all the circumstances, reasonable men in the position of the principal and agent would expect...Since the parties can make what agreements they please, and since, with the exceptions state in Comment *b*, such agreements are enforceable, the rules stated in Section 378-398 are, with the same exceptions, dependent upon the nonexistence of an agreement to the contrary.
>
> In many situations, the principal has an action of tort against the agent for violation fo duty.  Although such action is not based upon the theory that the agent has failed to perform his promise, but upon the theory that the agent has improperly dealt with the affairs entrusted to him by the principal, the question whether or not the agent has improperly managed the principal's affairs depends upon the interpretation of his agreement with the principal, since this determines the scope of his undertaking.

Restatement 2d of the Law of Agency, § 376, Comment *a* (2006).

The motion to dismiss must be denied with respect to the fiduciary claims for lack of proper and adequate notice of the sale of Wyndham International and for unwarranted disruption in the performance of Wyndham Management's responsibilities under the agreement.  These claims may, in fact, be governed by terms in the agreement, and limited thereby.  This remains to be proven.  On a motion to dismiss, however, the court must evaluate whether a claim has been stated, not whether it will prove ultimately successful.  21C LLC asserts that Wyndham Management did not timely reveal information concerning matters which would directly impact its ability to perform

---

[4](...continued)

additional reason for rejecting this claim is that an agent is a fiduciary only with respect to matters within the scope of his agency. *See, Monumental Life Ins. Co.*, 242 F.Supp.2d at 449 and cases cited therein.  The scope of the agency formed by the agreement reaches only those duties of management and operation of the hotel which were agreed upon in the contract.  A claim of a general duty to "do no harm" to 21C cannot be wielded with abandon so as to expand the scope of the agency beyond the operation and management of the 21C property.

satisfactorily under the agreement.  It also urges that it failed to take steps to avoid disruption in its timely performance under the agreement.  To the extent that Count IV alleges that Wyndham Management, being obligated as agent of 21C LLC to achieve a timely and successful opening of the hotel, thus improperly managed the affairs of its principal and compromised the outcome of the launch of 21C, 21C LLC has stated a tort claim for violation of fiduciary duties which may fall outside the terms of the agreement.  The motion to dismiss these claims under Count IV will be denied.

For the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, Wyndham Management Corporation, to dismiss (DN 10) is **GRANTED IN PART AND DENIED IN PART**. **IT IS FURTHER ORDERED** that Count III and Count IV, ¶ 89 are **DISMISSED.**

**IT IS SO ORDERED.**